691 N.W.2d 436 (2005)
472 Mich. 854
PEOPLE of the State of Michigan, Plaintiff-Appellant,
v.
Kevin HARRINGTON, Defendant-Appellee.
Docket No. 126946. COA No. 253918.
Supreme Court of Michigan.
January 28, 2005.
On order of the Court, the application for leave to appeal the May 28, 2004 order of the Court of Appeals is considered, and it is DENIED, because we are not persuaded *437 that the questions presented should be reviewed by this Court. The motion to permit amendment of the record is DENIED.
WEAVER, J., would remand this case to the Court of Appeals for consideration as on leave granted.
CORRIGAN, J., dissents and states as follows:
I respectfully dissent from the order denying the prosecutor's application for leave to appeal in this first-degree murder case. I would remand this case to the Court of Appeals for consideration as on leave granted. While Judge Michael Hathaway may arguably be correct that defendant is entitled to a new trial, I believe that his decision should be fully evaluated and tested by a three-judge panel before the trial court is required to conduct a second trial at considerable taxpayer expense.
The majority does not explain its refusal to allow a full review of this troubling case in the Court of Appeals. I have two fundamental concerns about the majority's action. First, the codefendant received a contradictory ruling denying him relief on the very same Confrontation Clause issue for which defendant received a new trial. This glaring inconsistency warrants, at a minimum, a full review by the Court of Appeals.
Second, I am concerned that the majority, by refusing to accord full appellate review, has left intact a decision that essentially rewards conduct that no legal system should ever tolerate. Specifically, it appears that retained defense counsel's inappropriate and abusive behavior at trial, including intimidating comments directed at the trial judge and the prosecutor, may well have been designed to invite error. If the defense did employ such a deliberate strategy at trial, it may preclude the grant of a new trial on the basis of that misconduct.
At the very least, these issues deserve a thorough and considered appellate review. The majority's refusal to allow any such review  by denying leave rather than remanding to the Court of Appeals for consideration as on leave granted  is troubling.

I. Inconsistent Confrontation Clause rulings
I conclude that submission to a three-judge panel is warranted because defendant and the codefendant received contradictory rulings on the identical Confrontation Clause issue. They were tried jointly before a single jury in the courtroom of Judge Diane Hathaway. Judge Hathaway declared one of the witnesses for the prosecution unavailable after the witness proved uncooperative on the stand. The prosecutor was then allowed to use the witness's preliminary examination testimony as substantive evidence against both defendants. Both defendant and codefendant Clark had fully cross-examined this witness at the preliminary examination.
It should be noted that both defendants apparently engaged in witness intimidation tactics that likely caused the witness to freeze on the stand. After murdering the victim, the defendants threatened to harm the witness and her children if she informed the police about what she saw. Further, during the codefendant's preliminary examination, his girlfriend threatened this witness by making a hand motion simulating a slit throat. In addition, defendant overtly glared at the witness while she attempted to testify at trial.[1]
*438 After the jury convicted both defendants of first-degree murder, defendant retained another attorney and moved for a new trial. When Judge Diane Hathaway recused herself, the case was transferred by blind draw to Judge Michael Hathaway. The basis for defendant's motion for a new trial was his inability to cross-examine the witness who was declared unavailable. Judge Michael Hathaway initially ruled that any error was harmless and denied defendant's motion. Likewise, Judge Diane Hathaway denied the codefendant's motion for a new trial, which motion was based on the identical confrontation argument.
Like defendant, the codefendant claimed that his confrontation rights were violated when the prosecution's witness was ruled unavailable at trial and her preliminary examination testimony was thereafter read into the record. Judge Diane Hathaway ruled that the codefendant was not denied his right to confrontation because his misbehavior rendered the witness unavailable. Judge Michael Hathaway, however, ultimately reached a directly contrary conclusion, and ruled that defendant's confrontation rights were violated. The Court of Appeals should review the matter and resolve the apparent contradiction.
In Crawford v. Washington, 541 U.S. 36, ___, 124 S.Ct. 1354, 1370, 158 L.Ed.2d 177 (2004), the United States Supreme Court stated that "the rule of forfeiture by wrongdoing... extinguishes confrontation claims on essentially equitable grounds...." The prosecutor's claim that defendant (and the codefendant) forfeited their Sixth Amendment rights to confront their accuser by continually intimidating the witness warrants plenary consideration, especially where it resulted in contradictory rulings between the codefendants who had alleged precisely the same claim of confrontation violation.[2]

II. Defense counsel's misconduct
The other apparent basis for the grant of a new trial was a claim of ineffective assistance of counsel arising from retained defense counsel's misconduct. Throughout the trial, defense counsel behaved in a disrespectful and inappropriate manner toward the judge and the prosecutor. While much of counsel's behavior occurred outside the presence of the jury, the jury was present on three occasions in which counsel was fined by the trial court. In addition, it was later revealed that the jury overheard defense counsel shout a disparaging comment to the prosecutor while the jurors were in the jury room.
Judge Michael Hathaway took testimony regarding defense counsel's misconduct to use in referring counsel to the Attorney Grievance Commission. During this hearing, Judge Hathaway learned that the jurors overheard one of defense counsel's *439 disparaging comments directed at the prosecutor. Following this revelation, defendant's new counsel moved again for a new trial, on the new basis of ineffective assistance of counsel. Judge Michael Hathaway granted the motion, stating:
This trial was even worse than I thought it was in the first place. I now know from [the prosecutor's] testimony ... [t]hat [defense counsel's] abuse of her took an extremely personal turn, and under the circumstances where the jury, whether they were in the box or not. Apparently overheard the remarks that he made to her, and that the jury commiserated with her about his treatment of her, in discussing the case with her after the verdict, in very sympathetic and supportive ways.
And when you combine [defense counsel's] outrageous behavior during the [course] of this trial, with the fact that the jury knew about much of it, and commiserated with the prosecutor over it, as any human being would, under these circumstances. And then you also look back on the conduct of the trial itself, the way in which this reluctant witness was, her testimony was managed by the trial Court, and parts of her prior testimony read in on a question-by-question basis.
The trial [court's] ruling about the admission of that testimony... [t]here is no question in my mind that this trial was a complete wreck, in extremely basic and fundamental ways....
* * *
It's not in any way the kind of strategy or behavior that we could attribute to the defendant, or say that the defendant is somehow benefiting from it.
Judge Michael Hathaway thus reconsidered his earlier denial of defendant's motion for a new trial, because of defense counsel's "outrageous behavior." What has not been tested through plenary appellate review, however, is retained defense counsel's ploy of creating an appellate parachute.
The apparent defense strategy of intimidating all those who stood in the way of an acquittal, and of being as disruptive as possible, became evident throughout these proceedings, beginning as early as the preliminary examination. An example of these tactics includes defense counsel's calling the assistant prosecuting attorney, who was a woman, a "tramp" whom he wanted to "shut up." Counsel's obstructionist behavior forced the court to hold him in contempt of court, to fine him three times during the trial, and to send him to jail. Counsel even went so far as to accuse the court of treating him like a "Negro slave," and then dared the court to hold him in contempt yet again. While these actions largely took place outside the presence of the jury, they nonetheless appear to be actions designed to goad the court with the hopes of establishing error requiring reversal.
Indeed, defense counsel's own comments at trial suggest that his outrageous behavior was designed to invite error and create an appellate parachute. During trial, defense counsel made the apparently self-fulfilling prophecy that "this is going to come back on appeal." During his closing argument, defense counsel told the jury:
... please, please don't hold anything that I've done or my confrontations with the Judge or the prosecution and my willingness to be fined because you know what? My father, he used to work for a judge....
* * *
... I'm a lawyer, not a doormat. And I'm going to do my job whether I have to go broke in the process.

*440 * * *
Don't think about that. Don't think about me being held in contempt. That has nothing to do with it because I'm representing my client.
Thus, defense counsel created an appellate parachute for a claim of ineffective assistance of counsel while at the same arguing to the jury that the same ineffective assistance was simply part of doing his "job."
Because defense counsel's misconduct was central to Judge Michael Hathaway's decision to grant a new trial, I believe we should remand this case to the Court of Appeals so that a three-judge panel may fully review this troubling case for invited error. This Court should not deny plenary review of a decision that rewards such offensive and inappropriate behavior. For these reasons, I respectfully dissent from this Court's order denying the prosecutor's application for leave to appeal.
NOTES
[1] Judge Michael Hathaway acknowledged in his first ruling denying defendant's motion for a new trial that, "one can sort of pick that up in the trial transcript. I mean it's obvious that she was spooked by something."
[2] Interestingly, in his first ruling denying defendant's motion for a new trial, Judge Michael Hathaway stated:

But as flawed and as awkward as that methodology, which ultimately was abandoned fortunately, but as flawed and as awkward it was, the defense attorney asked it to be done that way.
It was [defense counsel] Mr. Evans who insisted on the People proceeding on a question-by-question basis to determine whether or not the witness had a recollection sufficient to answer any of the questions she was asked.
And unless I'm missing something, virtually every question that she did answer on direct examination in the trial was also asked in the Preliminary Examination transcript in one way or another, and the witness was very thoroughly cross-examined in the Exam.
In fact, the cross-examination of that witness was three or four times the length of the direct.